UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JO ANN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:12-00860 |
| | ) Judge Campbell/Brown |
| METROPOLITAN GOVERNMENT | ) |
| OF NASHVILLE AND DAVIDSON | ) |
| COUNTY, | ) |
| | ) |
| Defendant. | ) |

To: The Honorable Todd Campbell, United States District Judge.

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that: 1) the motion for summary judgment filed by the Metropolitan Government of Nashville and Davidson County (Metro) (Doc. 58) be **GRANTED**; 2) this case be **DISMISSED** with prejudice for failure to state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; 3) the order accepting and adopting this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; 4) any appeal **NOT** be certified as taken in good faith under 28 U.S.C. §1915(a)(3).

## I. INTRODUCTION

Plaintiff, proceeding *pro se*[1] and *in forma pauperis*, brought this Title VII action on August 20, 2012. (Doc. 1) The case was referred to the Magistrate Judge on August 23, 2012 to enter a scheduling order for the management of the case, to dispose or recommend the disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(a) and (b), and to conduct further proceedings if

---

[1] Attorney Joseph Johnston filed a notice of appearance on behalf of plaintiff on May 20, 2013. (Doc. 31)

necessary under Rule 72(b), Fed. R. Civ. P. and the local rules of court. (Doc. 3)

Of the five original defendants to this action, four – less Metro – filed a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P. on September 18, 2012 arguing that they were not amenable to suit under Title VII. (Doc. 11) Plaintiff amended her complaint on October 9, 2012 naming Metro as the sole defendant. (Doc. 16) Thereafter, the other four original defendants withdrew their motion to dismiss. (Doc. 17)

Metro filed a motion for summary judgment and supporting documents on February 18, 2014. (Docs. 58-60) Plaintiff responded on March 27, 2014 (Docs. 65-69), and Metro replied on April 8, 2014. (Docs. 70-71) This matter is now properly before the court.

## II. BACKGROUND

Plaintiff was a fourth grade teacher at the Park Avenue Enhanced Option School (Park Avenue School) in Nashville at the time of the alleged events that gave rise to this action. (Doc. 16, ¶ IV.5, p. 2) She was probationary employee, and her contract was subject to renewal. Plaintiff received an unsatisfactory evaluation on April 25, 2011 and was advised on May 10, 2011 that her contract would not be renewed for the upcoming school year. (Doc. 16, ¶ IV.15, p. 3)

Plaintiff alleges that she was discriminated against because of her race – plaintiff is an African-American – in violation of Title VII. (Doc. 16, ¶ VI.23, p. 4) Plaintiff couches her demand for relief solely in terms of disparate treatment, *i.e.*, that her employment at the Park Avenue School was terminated for allegedly unprofessional conduct, whereas non-African-American teachers at Park Avenue School were not terminated for similar or worse conduct. Plaintiff identifies the following non-African-American teachers at Park Avenue School whom she alleges were treated differently than she:

    A.    **Carol Elmore** – Plaintiff asserts that Ms. Elmore "falsified Plaintiff's grades of students" and that she "disrespected an African-American coach . . . in the

2

        presence of teachers [and] coaches . . . ." Plaintiff avers that Ms. Elmore did not receive low marks, nor were the incidents reflected in her evaluation.

  **B.**     **Joseph Behling** – Plaintiff asserts that Mr. Behling "disrespected her in the presence of students," but that he did not receive low or unsatisfactory marks on his evaluation.

  **C.**     **Hannah Heidel** – Plaintiff asserts that Ms. Heidel "neglected her teaching responsibilities for about a month before she was discovered," but that she did not receive low or unsatisfactory marks on her evaluation.

  **D.**     **Lisa Brumfield** – Plaintiff asserts that Ms. Brumfield "was given two warnings about excessive tardiness before she was written up."

(Doc. 16, ¶¶ IV.7-10, pp. 2-3)

Metro argues in its motion for summary judgment that the only adverse employment action at issue is the decision to terminate plaintiff's employment. (Doc. 59, pp. 2-4) Metro argues further that the above-named teachers were not similarly situated because they did "not have the same history of neglecting their responsibilities and behaving in an unprofessional manner," and that they were "tenured teachers, whereas [plaintiff] was probationary." (Doc. 59, pp. 2, 6) Finally, Metro argues that plaintiff is "unable to show that the reasons proffered by Metro for her non-renewal [we]re a 'pretext' for discrimination." (Doc. 59, pp. 1, 2, 7)

Metro avers that the following events during plaintiff's employment at Park Avenue School demonstrate plaintiff's history of neglecting her responsibilities and behaving in an unprofessional manner:

  **A.**     Dexter Adams, the vice principal at Park Avenue School, gave plaintiff negative marks on her March 2010 evaluation for, "among other things, not engaging in dialogue with her students that 'demonstrate[d] respect.'"

  **B.**     Plaintiff did not turn in a lesson plan for the week of August 20, 2010, until Deltina Braden, the Principal at the Park Avenue School, "spoke to her about it," the effect of which was that the lesson plan was submitted one week late.

C. Plaintiff did not "complete the necessary forms and turn in workbooks in a timely manner when a student was transferring to another school."

D. Plaintiff "completed course work for TSU using personnel from the School as a proctor, or supervisor for the work, without first obtaining permission from the Principal . . . ."

E. Plaintiff "did not send home a notice of concern for a student who was not progressing satisfactorily."

F. Plaintiff received a written reprimand dated November 22, 2010 for: "being disrespectful to a presenter . . . who was attempting to train the fourth grade teachers on [a] new . . . computer system"; for using inappropriate language, *i.e.*, for telling Ms. Elmore that she was "'pissed off' at her"; and for "speaking inappropriately to a fourth grade student," *i.e.*, for telling him that "'Only the strong will survive in my classroom.'"

G. Plaintiff had "difficulty getting along with her colleagues," and she "often borrowed money from them while at school."

(Doc. 59, pp. 5-6) In her February 17, 2014 declaration, Ms. Braden declared that the incidents listed above were the "the reasons why [plaintiff's] contract was not renewed . . . in May 2011 . . . for the next school year . . . ." (Doc. 58, Ex. A, Attach. 4, ¶ 5, p. 3)

In her response to the motion for summary judgment, plaintiff disputes Metro's contention that there is only a single adverse employment action in this case. (Doc. 65, ¶ I.C, pp. 3-4) Plaintiff argues that the evaluation that led to her contract not being renewed also constituted an adverse employment action.

Plaintiff also provides the following in her response with respect to ¶¶ A-G above. Plaintiff admits that she was counseled during her evaluation by Mr. Adams for using the expression "hood rats" to describe the behavior of two of her students. (Docs. 65, I.D.1.c, p. 6; 68, ¶ 5, p. 2; 69, ¶ 6, p. 3) Plaintiff admits that she was late turning in the lesson plan at issue, but blamed the delay on printer problems. (Docs. 65, ¶ I.D.1.a, p. 5; 68, ¶ 7, p. 3; 69, ¶ 6, p. 3) Plaintiff admits having not completed the necessary forms and turning in workbooks for a transferring student until told to do

4

so by the school secretary. (Docs. 65, ¶ I.D.1.e, pp. 6-7; 68, ¶ 8, pp. 3-4; 69, ¶ 7, p. 4) Plaintiff admits that she used school resources for TSU course work without obtaining permission first. (Docs. 65, ¶ I.D.1.d, p. 6; 68, ¶ 6, pp. 2-3; 69, ¶ 8, p. 4) Plaintiff does not deny that she did not send a formal notice of concern for a student who was not progressing satisfactorily. (Docs. 68, ¶ 10, p. 4; 69, ¶ 9, p. 5) Plaintiff asserts that she was falsely accused of being disrespectful to the presenter during the new computer system presentation.[2] (Docs. 65, ¶ I.D.1.a, p. 5; 68, ¶ 11, p. 5; 69, ¶ 10, pp. 5-6) Plaintiff admits that she told Ms. Elmore that she was "pissed off" at her. (Docs. 65, ¶ I.D.1.f, p. 7; 68, ¶ 11, p. 5; 69, ¶ 4, p. 2) Plaintiff admits using the expression "only the strong survive in my classroom." (Docs. 65, ¶ I.D.1.f, p. 7; 68, ¶ 11, p. 6; 69, ¶ 11, p. 6) Plaintiff admits borrowing money from her colleagues. (Docs. 65, ¶ I.D.1.h, pp. 7-8; 68, ¶ 12, pp. 6-7; 69, ¶ 14, pp. 7-8) Plaintiff admits that she had problems with Ms. Elmore and Mr. Behling. (Docs. 65, ¶ I.D.1.g, p. 7; 68 ¶ 12, pp. 6-7)[3]

### III. ANALYSIS

#### A. Summary Judgment Standard

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Newman v. Federal Express Corp.*, 266 F.3d 401, 404-05 (6th Cir. 2001). A "genuine issue of material fact" is a fact

---

[2] The presenter, Ms. Patricia Steinman, testified at her deposition that, although she "d[id]n't remember Ms. Jones," and although she "could not single her out," Ms. Jones was not the teacher who "got up . . . so disgruntled that she . . . went to the phone in the computer room and called the principal . . . ." (Doc. 58, Ex. A. Attach. 5, pp. 11-12) Ms. Steinman testified further that she had no recollection of any interaction with Ms. Jones. (Doc. 58, Ex. A, Attach. 5, pp. 12-13)

[3] The Magistrate Judge notes for the record that plaintiff makes numerous allegations of impropriety against Ms. Braden and others in connection with those instances described above. As discussed below at pp. 8-10, the matter before the court turns ultimately on whether plaintiff was similarly situated with non-protected employees who were treated more favorably than she. Plaintiff's allegations of impropriety are not germane to that inquiry.

which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *First Nat. Bank of Arizona v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine issue of material fact," then summary judgment should be denied. *Sowards*, 203 F.3d at 431. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting *Celotex Corp.*, 477 U.S. at 325). A court deciding a summary judgment issue must accept as true the non-moving party's evidence and accept all justifiable inferences that can be drawn therefrom. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see Coble v. City of Whitehouse, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "A 'mere scintilla' of evidence, however, is not enough for the non-moving party to withstand summary judgment." *U.S. ex. Rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 351 (6th Cir. 2012)(quoting *La Quinta Corp. v. Heartland Prop.*, LLC, 603 F.3d 327, 335 (6th Cir. 2010)(citing *Ciminillo*, 434 F.3d at 464)).

## B. Title VII

Title VII prohibits an employer from "disciminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007)(quoting 42 U.S.C. § 2000e-2(a)(1)). "Where, as here, a case is at the summary judgment stage . . . the plaintiff must submit evidence from which a reasonable jury could conclude both that she has established *a prima facie* case of discrimination and that the defendant's legitimate, nondiscriminatory reason for its action, if any, is pretext for unlawful discrimination." *Vincent*, 514 F.3d at 494 (citing the burden-shifting framework for evaluating discrimination claims as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), as modified by *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981))).

To establish a *prima facie* case of race discrimination, plaintiff must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent*, 514 F.3d at 494 (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)). An adverse employment action in the context of Title VII requires an alteration in a significant term or condition of employment such as:

> termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 594 (6th Cir. 2007); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). If plaintiff succeeds in establishing a *prima facie* case

of race discrimination, then she is entitled to a rebuttable presumption of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)(citing *Texas Dept. Of Community Affairs*, 450 U.S. at 254).

If a Title VII plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802 ;*Wright*, 455 F.3d at 706-707. If the defendant is able to establish a nondiscriminatory reason for the adverse action, then the burden shifts back to the plaintiff to prove that the reason offered by the defendant was a pretext for unlawful discrimination. *McDonnel Douglas Corp.* at 804; *Wright*, 455 F.3d at 707 (citing *DiCarlo*, 358 F.3d at 414-415). "Throughout th[e] burden-shifting approach, the plaintiff bear[s] the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright*, 455 F.3d at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

### C. Argument

#### 1. Plaintiff's *Prima Facie* Case

The parties agree that plaintiff is an African-American. (Docs. 59, p. 1; 65, p. 1; 71, p. 1) African-Americans are members of a protected class. *Perkins v. Harvey*, 368 Fed.Appx. 640, 644 (6th Cir. 2010). Plaintiff maintains that, with more than 10 years teaching experience, she was qualified for her job as a fourth grade teacher at Park Avenue School. (Doc. 65, p. 3) Metro does not dispute plaintiff's qualifications. Metro also does not dispute that plaintiff's termination constituted an adverse employment action.[4] Plaintiff satisfies the first three elements required to

---

[4] As previously noted above at p. 3, Metro argues that "none of the incidents included in [plaintiff's] Complaint rises to the level of an 'adverse employment action,' except the May 2011 termination of her employment . . . ." (Doc. 59, p. 2) Plaintiff, in turn, argues that the evaluation that led to her contract not being renewed also amounted to an adverse employment action. It is not necessary to address whether the negative evaluation was an adverse employment action for purposes of determining whether plaintiff has made a *prima facie* case of race discrimination. That plaintiff's

establish a *prima facie* case of race discrimination under Title VII.

Plaintiff having satisfied the first three elements of a *prima facie* case of race discrimination, the only remaining question is whether similarly situated, non-protected employees were treated more favorably than she under the facts of this case. For the purpose of analyzing the fourth element, the Magistrate Judge takes the following as true regarding the four comparators, Ms. Elmore, Mr. Behling, Ms. Heidel, and Ms. Brumfield: 1) they are not African-American; 2) they actually did those things plaintiff accuses them of doing; 3) those things plaintiff accuses them of doing were improper and/or unprofessional; and 4) no adverse employment action was taken against them, in the form of negative performance evaluations, termination, or otherwise.

To establish that the proffered comparator employees are "similarly situated," plaintiff must show that "[s]he and h[er] proposed Comparator[s] were similar in all relevant respects and that [s]he and h[er] proposed Comparator[s] engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)(internal citation omitted). In reviewing whether a comparator employee is similarly situated, the court considers, among other things, if they "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Craig-Wood v. Time Warner N.Y. Cable LLC*, 549 Fed.Appx. 505, 501 (6th Cir. 2014)(quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Again, taking plaintiff's allegations against the four comparators as true, three of the four conducted themselves improperly and/or unprofessionally on a single occasion, with Ms. Elmore apparently having done so twice. Discounting the incident where plaintiff was improperly accused of being disrespectful to Ms. Steinman, plaintiff admits to eight separate incidents over the course

---

employment was terminated is sufficient for that purpose.

of a school year that led her termination. The disparity in the number of incidents, and duration of the conduct involved, establish that the conduct of plaintiff and the comparators was not similar in all relevant respects.

As to the question of comparable seriousness, plaintiff argues that the alleged conduct of the four comparators was more serious than hers, but in no event any less serious. However, no determination can be made from the record as to the seriousness of the incidents of improper and/or unprofessional conduct that plaintiff attributes to the four comparators, nor has plaintiff provided evidence of the seriousness of those alleged incidents *vis-a-vis* her own admitted conduct. Plaintiff's subjective characterization of the four comparators' conduct is not evidence.

One also cannot overlook the disparity in numbers and duration of incidents alleged and admitted in addressing the question of comparable seriousness. Absent any evidence that the comparators' alleged conduct was more serious than plaintiff's, the Magistrate Judge assumes for the sake of argument that the comparators' alleged conduct was at least as serious as plaintiff's. Based on that assumption, a reasonable jury would conclude that plaintiff's conduct was more serious than the four comparators' based on her pattern of conduct over an entire school year.

As shown above, plaintiff and the comparators were not similarly situated.[5] Because plaintiff and the comparators were not similarly situated, plaintiff fails to establish a *prima face* case of race discrimination. Because plaintiff fails to establish a *prima facie* case of race discrimination, there is no need to proceed further with the *McDonnell Douglas* burden-shifting analysis, and Metro's motion for summary judgment should be granted.

---

[5] It is unnecessary to address whether the comparators received more favorable treatment than plaintiff because plaintiff and the comparators were not similarly situated.

## IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that: 1) Metro's motion for summary judgment (Doc. 58) be **GRANTED**; 2) this case be **DISMISSED** with prejudice for failure to state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; 3) the order accepting and adopting this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; 4) any appeal **NOT** be certified as taken in good faith under 28 U.S.C. §1915(a)(3).

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 12th day of May, 2014.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge

11